In any event, Mr. Geness plausibly shows the continuing violations doctrine applies to the unique facts of this case. The continuing violations doctrine is "an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time."[51] Mr. Geness alleges only a pattern of deliberate indifference to his intellectual disability could result in the Commonwealth subjecting him to 3,309 days of pretrial detention. He alleges liability based on a connected pattern of indifference, not discrete acts or determinations. Our Court of Appeals also appeared to frame these claims as based on such a pattern. As our Court of Appeals aptly summarized, Mr. Geness was the victim of "multipoint failures in the criminal justice system,"[52] suffering "devastating consequences" because "one or more of" the critical players in the criminal justice system "fail[ed] to diligently safeguard the civil rights with which they are entrusted."[53]
We are not the first to apply the continuing violations doctrine to ADA claims *455 alleged by persons in custody. Judge Gibson's application of the doctrine in Scherer v. Pennsylvania Department of Corrections is particularly relevant.[54] In Scherer , a cellmate killed an inmate suffering from schizophrenia, bipolar disorder and chronic paranoia in the prison's Restrictive Housing Unit. The inmate's estate sued the Pennsylvania Department of Corrections and various Corrections Defendants, among others, alleging "their actions or inactions in treating the Decedent's mental illness and their manner of housing the Decedent prior to and including the day of his death" violated the Eighth Amendment, the ADA, and the Rehabilitation Act.[55]
The defendants argued the court must dismiss due to untimely claims. Judge Gibson rejected the argument and applied the continuing violation doctrine: "the Court views the placement of the Decedent in the [Restrictive Housing Unit] as an act which is part of a pattern of conduct alleged against the Corrections Defendants that allegedly violated the Decedent's rights as a person with mental illness."[56] Such an act, Judge Gibson found, "evidences and is part of the alleged lack of professional attention and care that the Plaintiff views as a continuing pattern of discrimination in the Corrections Defendants' manner of treatment of prisoners, such as the Decedent, who are afflicted with mental illnesses. It suffices to state, without reviewing each of the allegations challenged by the Corrections Defendants, that the Court views the allegations of the Amended Complaint, not as discrete acts, but as a pattern of conduct supporting the application of the continuing violations doctrine."[57]
Judge Gibson's reasoning applies with equal force to the Commonwealth's repeated lack of attention and care to Mr. Geness. Timeliness is no bar to Mr. Geness's claims proceeding to discovery.[58]
B. The Commonwealth's purported inability to direct its judges does not shield it from liability.
The Commonwealth argues we must dismiss Mr. Geness's amended complaint because the Commonwealth cannot control or direct the conduct of its judges; such supervisory power, it argues, belongs exclusively to the Pennsylvania Supreme Court. But despite the Commonwealth's attempt to shield itself from liability by relying on separation of powers principles, *456 the Supreme Court in Tennessee v. Lane held "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."[59]
Nor did our Court of Appeals identify such concerns as an obstacle to recovery under the ADA in its detailed opinion. Rather, it found "[a]s alleged, these multiple, protracted, and inexcusable delays in the handling of Geness's examinations, transfers, and motions-resulting in nearly a decade of imprisonment and civil commitment before a hearing was finally held on his habeas petition-are more than sufficient to state a claim under the ADA."[60] Our Court of Appeals cited various cases applying the ADA to claims alleging discrimination surrounding access to the courts. Our Court of Appeals found Mr. Geness "sufficiently pleaded" the elements required to state a claim under Title II of the ADA.[61] And although our Court of Appeals found Mr. Geness had not plead the deliberate indifference of Commonwealth actors, he has, as we detail below, amended to include specific allegations of deliberate indifference. Our Court of Appeals also found Mr. Geness's allegation "sufficient to sustain" his claim "that he was deprived ... of normal benefits of criminal procedure and due process of law, both as to his protracted incarceration without prompt transfer to a mental health facility, and his protracted institutionalization without a realistic prospect of trial."[62]
The Commonwealth also cites authority from our Court of Appeals holding Pennsylvania courts are immune from suit under Section I of the ADA.[63] In what appears to be the inverse of its argument it cannot control state judges, the Commonwealth argues the courts are "instrumentalit[ies]" of the state. To the extent the Commonwealth attempts to invoke sovereign immunity here, Congress in Title II of the ADA expressly waived such immunity.[64] When a plaintiff alleges a cause of action under Title II for conduct violating both the ADA and the Fourteenth Amendment, Congress's waiver of sovereign immunity is clear and valid. Title II, the Supreme Court held in United States v. Georgia , "creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment."[65]
Our Court of Appeals' detailed analysis demonstrates Mr. Geness's sufficiently states a claim for conduct "that actually violate[d] the Fourteenth Amendment," and neither sovereign immunity nor the purported inability to control judges requires dismissal.
C. Mr. Geness pleads the Commonwealth actors' deliberate indifference.
The Commonwealth argues Mr. Geness still fails to plausibly allege the deliberate indifference of Commonwealth actors, despite our Court of Appeals holding his failure to cure this defect on remand would preclude recovery of monetary damages.[66] Mr. Geness, however, now *457 "ma[kes] the bare showing in the allegations of the amended complaint required to survive a motion to dismiss" his claims for monetary damages.[67]
Our Court of Appeals held Mr. Geness can only recover monetary damages on his ADA claim if he " 'adequately ple[a]d[s] that [the Commonwealth] acted with deliberate indifference to the risk of an ADA violation.' "[68] To plead deliberate indifference, Mr. Geness must plausibly "allege '(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge.' "[69] Our Court of Appeals recently explained a plaintiff can carry her burden of showing deliberate indifference "in two different ways: first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of ... cognizable harm was so great and so obvious that the risk and the failure ... to respond will alone support finding deliberate indifference."[70]
Mr. Geness plausibly alleges facts indicating he can prove the risk of cognizable harm was "great" and "obvious." Mr. Geness alleges Judge Wagner and Fayette County Prison Warden Brian S. Miller served together "on an advisory committee designed to address issues relating to the Fayette County Prison."[71] Mr. Geness alleges "[t]hroughout the duration of [Mr. Geness's] incarceration, Warden Miller made numerous complaints directly to Defendant Wagner about [Mr. Geness's] mental health status and his unlawful and prolonged imprisonment."[72] Specifically, Mr. Geness alleges "Warden Miller insisted on multiple occasions that the Court remove [Mr. Geness] from the Fayette County Prison and repeatedly asked Defendant Wagner to 'do something' about the Plaintiff."[73]
Despite Warden Miller's alleged requests to Judge Wagner, the Judge "did not take any action to remove [Mr. Geness] from Fayette County Prison or to place [him] in a mental health facility."[74] Meanwhile, Mr. Geness languished in pretrial detention. When considered against the backdrop of the repeated findings of Mr. Geness's incompetence, coupled with the monthly opportunities to assess the status of the case at the "call of the list," the risk of cognizable harm would have been great and obvious. On November 29, 2010, for example, Judge Wagner ordered Mr. Geness "be transferred from Fayette County Prison to Torrance State Hospital ("Torrance") for a period not to exceed 90 days to again determine [Mr. Geness's] capacity to stand trial and to evaluate [his] ability to potentially regain competency within a reasonable period of time."[75]
*458 Judge Wagner ordered this transfer even though he previously deemed Mr. Geness incompetent to stand trial on June 18, 2007,[76] Judge Warman made the same finding on August 21, 2007,[77] and a court-ordered psychiatric evaluation of September 25, 2007 found Mr. Geness had a "poor" prognosis for improvement.[78]
Mr. Geness's allegations of deliberate indifference contrast with those in S.H. ex rel. Durrell v. Lower Merion School District , in which our Court of Appeals rejected a plaintiff's attempt to show deliberate indifference by relying on information post-dating the challenged Commonwealth decision. The plaintiff alleged the school district's mislabeling her as a disabled student violated the ADA. Plaintiff argued on appeal there was "a genuine factual dispute as to whether the School District was deliberately indifferent toward" the student,[79] and relied on evaluations of three psychologists, which, the plaintiff claimed, "put the School District on notice."[80] Our Court of Appeals found the argument unpersuasive because a party prepared two of the evaluations for the lawsuit and the other after the school designated the student as a having a disability.[81] This is not the case today. Mr. Geness alleges Commonwealth actors on the prison's advisory council had communicated concerns surrounding his treatment contemporaneous with repeated monthly continuances and determinations he was incompetent to stand trial. Mr. Geness may therefore proceed to discovery on his claim for monetary damages under the ADA.
IV. Conclusion
In the accompanying order, we deny the Commonwealth's motion to dismiss Mr. Geness's amended complaint.

Foster v. Morris , 208 F. App'x 174, 177 (3d Cir. 2006).

Geness , 902 F.3d at 365.

Id.

No. 2004-191, 2007 WL 4111412 (W.D. Pa. Nov. 16, 2007).

Id. , at *1.

Id. , at *3.

Id.

We are also mindful "[our] Court [of Appeals] (and [its] sister circuit courts) have reasoned that, because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." In re Cmty. Bank of N. Virginia , 622 F.3d 275, 301-02 (3d Cir. 2010), as amended (Oct. 20, 2010); see also Elchik v. Akustica, Inc. , No. 12-00578, 2013 WL 1403341, at *2 (W.D. Pa. Apr. 5, 2013) ("Our Court of Appeals has cautioned that it is generally inappropriate to resolve a plausible equitable tolling argument against a plaintiff at the Motion to Dismiss stage, especially considering that the statute of limitations is an affirmative defense."). The Commonwealth, consistent with its obligations under Fed. R. Civ. P. 11, may therefore renew this argument on summary judgment, but should the Commonwealth raise this issue again, Mr. Geness may renew his alternative argument tolling is warranted in this exceptional circumstance due to Mr. Geness's mental illness. See Geness , 902 F.3d at 355 (holding, when appropriately raised by a party, "we may toll the statute of limitations pursuant to a state law discovery rule or applicable federal tolling principle").

Tennessee v. Lane , 541 U.S. 509, 533-34, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).

Geness , 902 F.3d at 362.

Id. at 361.

Id. at 363.

See ECF Doc. No. 146 at 13.

We note the Commonwealth never uses the words "sovereign immunity." But because the cases it cites discuss the doctrine, we address it in any event.

United States v. Georgia , 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006).

See ECF Doc. No. 146 at 10-12.

White v. Napoleon , 897 F.2d 103, 109 (3d Cir. 1990).

Id. (quoting Haberle v. Troxell , 885 F.3d 170, 181 (3d Cir. 2018) ). The applicable deliberate indifference standard mirrors the deliberate indifference standard we apply "in the context of § 1983 suits by prison inmates." S.H. ex rel. Durrell v. Lower Merion Sch. Dist. , 729 F.3d 248, n. 23 (3d Cir. 2013).

Haberle , 885 F.3d at 181 (quoting S.H. ex rel. Durrell v. Lower Merion Sch. Dist. , 729 F.3d 248, 265 (3d Cir. 2013) ).

Haberle , 885 F.3d at 181 (citation and internal quotation marks omitted).

Id. at ¶ 42.

Id. at ¶ 43.

Id. at ¶ 44.

Id. at ¶ 45.

Id. at ¶ 39.

Id. at ¶ 19.

Id. at ¶ 22.

Id. at ¶ 24.

729 F.3d 248, 265 (3d Cir. 2013).

Id. at 266.

Id.